In re Petition of T.J.L. and B.J.L.

**Z.W., Appellant.**

Nos. 07–FS–553, 07–FS–554.

District of Columbia Court of Appeals.

Argued April 30, 2008.
Decided July 22, 2010.

Jennifer A. Renton, appointed by the court, for appellant Z.W.

Michael K. O'Keefe, Wilton, CT, for appellees T.J.L. and B.J.L.

Shannon Thyme Klinger, guardian ad litem, for appellees D.W. and I.W.

Catherine Ferrando, Assistant Attorney General for the District of Columbia, with whom Peter J. Nickles, Attorney General, Todd S. Kim, Solicitor General, and Donna M. Murasky, Deputy Solicitor General, were on the brief, for appellee District of Columbia.

R. Michael LaBelle, Washington, DC, filed a statement in lieu of brief for appellees P.J. and A.J.

Thalia E. Meltz, Potomac, MD, filed a statement in lieu of brief for appellee B.M.

Before RUIZ, Associate Judge, and TERRY and FARRELL, Senior Judges.*

TERRY, Senior Judge:

In this case concerning the adoption of infant twins, a boy (D.W.) and a girl (I.W.), the birth mother appeals from the trial court's decision to grant the adoption petition of T.J.L. and B.J.L. The mother argues that the trial court was without jurisdiction to waive her consent to the adoption and that it erred in granting one of the two competing petitions for adoption, rather than the other. We affirm the trial court's order.

I

D.W. and I.W. ("the twins") were born on October 21, 2004, at a local hospital. Z.W. is their mother; the identity of their biological father is unknown. Z.W. had very limited contact with the twins prior to her discharge from the hospital on October 24. They had been exposed to cocaine *in utero,* and the male twin, D.W., tested positive for the drug shortly after he was born. Consequently, the twins were not deemed to be medically ready for discharge from the hospital until November 10, when they were in fact discharged. During the seventeen-day period when the twins remained alone in the hospital, Z.W. did not visit them, but twice she made telephone calls to the hospital to ask about their condition. The twins were taken into the care of the Child and Family Services Agency ("CFSA") on November 9, and within a day or two thereafter CFSA placed them with foster parents T.J.L. and B.J.L.

An Intake and Investigations Worker from CFSA was assigned to investigate whether the twins were neglected children. On November 10, 2004, the District of Columbia filed a petition in the Superior Court alleging that the twins were neglected. After a hearing on the District's petition, the court issued an order on March 14, 2005, finding that the twins were neglected because they had been abandoned by Z.W., their mother. T.J.L. and B.J.L. filed a petition to adopt the twins on May 26, 2005.

Earlier, in September or October of 2004, P.J. and A.J. had learned that Z.W. was pregnant with twins. A.J., the husband of P.J., is a member of the twins' extended family (he is a distant cousin). After the twins were born, P.J. and A.J. contacted the CFSA social worker assigned to the twins' case and asked for information about adopting them. A few months later, on August 31, 2005, P.J. and A.J. filed a petition to adopt the twins. Before the hearing on the two competing adoption petitions, P.J. and A.J. visited with the twins on several occasions, and in October of 2005 the twins spent a week with Mr. and Mrs. J. at their home in

---

* Judge Farrell was an Associate Judge of the court at the time of argument. His status changed to Senior Judge on January 23, 2009.

South Carolina. P.J. and A.J. completed all the formal requirements for interstate placement under the Interstate Compact on the Placement of Children.

On September 8, 2005, an investigator with the CFSA Diligent Search Unit personally served Z.W. with notice of the adoption petitions and a court order to show cause why her consent to adoption should not be waived. Z.W. did not appear in court in connection with the adoption or neglect proceedings (though she was represented by counsel, who did appear), did not sign a consent to either of the two competing adoption petitions, and did nothing to indicate that she had a preference between those two petitions.

The identity of the twins' father was initially thought to be unknown. After the court appointed an attorney for the unknown father, he was served, via posting in the Domestic Relations Clerk's Office, with notice of the adoption petitions and an order to show cause why his consent should not be waived. Some time later, however, the court learned that Z.W. had named B.M., the father of one of her other children, as the father of the twins,[1] and it issued an order appointing an attorney to represent him "out of an abundance of caution," even though B.M. himself had "reportedly questioned the possibility of paternity."

A three-day hearing began on November 28, 2005, in which the court first considered the waivers of parental consent and then the competing adoption petitions. As of November 28, B.M. had not been served with notice of the adoption petitions and the order to show cause. Nevertheless, the court, with the consent of the parties present, decided to begin the hearing on the condition that B.M., if he could be served and thereafter could prove paternity, would then be allowed to ask the court to reopen the record on the question of whether his consent should be waived.[2] The trial court issued a notice of the adoption proceeding and an order to show cause to B.M. on November 28. Two days later, on November 30, the court issued a supplemental notice and order to show cause to B.M. However, B.M. was not served with any of these notices and orders before the conclusion of the hearing.

In considering whether the consent of the birth mother and the consent of the putative or unknown father should be waived, the court took judicial notice of its earlier order dated March 14, 2005, in which it had found "that the twins were neglected children pursuant to D.C.Code § 16-2301(9)(A)(i) and (vii)." The court then found that there was clear and convincing evidence that the twins' father—whoever he might be—had abandoned them, since "[n]o one claiming to be the father of the twins or seeking to assert a parental relationship with [them] has ever made himself known to the Court, the assigned social worker, or the foster parent who has cared for the children since their birth." The court thus waived the consent of the putative father (B.M.), or the unknown father, under D.C.Code § 16-304(d). In addition, the court found that Z.W., the mother, had abandoned the twins, noting that she had "demonstrated no interest in assuming a parental role in

1. According to a background report in the record, Z.W. has several other children in addition to the twins, one of whom is identified as "B.M. Jr."

2. D.C.Code § 16-304(d) (2001) states that a parent's consent to an adoption petition is not required when, "after such notice as the court directs, [that parent] cannot be located, or has abandoned the prospective adoptee and voluntarily failed to contribute to his support for a period of at least six months next preceding the date of the filing of the petition."

the twins' life or even in visiting with them," and further, that she had failed to appear at the hearing even though she had been served with formal notice. Accordingly, the court waived Z.W.'s consent to adoption under D.C.Code § 16–304(d).

In the second portion of the bifurcated hearing, the court considered the two competing petitions to adopt the twins. After the hearing had ended and the parties had filed final written statements, the court issued a 26–page order on December 16, 2005, containing detailed findings of fact and conclusions of law.[3] It stated at the outset of its conclusions of law that both sets of petitioners were fit to adopt the twins under D.C.Code § 16–309(b)(2), and that the twins were suitable for adoption within the meaning of D.C.Code § 16–309(b)(1). The court then concluded, after considering the relevant statutory factors, that granting the adoption petition of T.J.L. and B.J.L. would be in the best interest of the twins.

Several weeks later, the court issued an order for alternative service and posting, in which it stated that the Diligent Search Unit of the CFSA had attempted unsuccessfully to serve B.M. personally with the earlier notice and order to show cause. The CFSA investigator filed an affidavit, informing the court that she had spoken to B.M. over the phone, but that he refused to provide an address for service. Given these representations of the investigator, the court concluded that B.M. was deliberately avoiding service and ordered that he be served by posting. The court ordered B.M. to appear at the next scheduled hearing or file an objection to the adoption petitions; if he failed to do so, the court said, any objection he might have would be waived. B.M. did not file any objection,

nor did he appear at any subsequent hearing.

On May 21, 2007, the court issued final decrees of adoption for both twins. From those orders Z.W. filed timely notices of appeal; she is the only appellant before us. P.J. and A.J. did not file notices of appeal, but they have filed a statement in this court advising us that they "support" Z.W.'s appeals. Appointed counsel for B.M. has filed a statement stating that "B.M. takes no position in this appeal."

## II

### A. *The Waivers of Consent*

Appellant maintains that the trial court was without jurisdiction to waive her consent to the adoption because it was "unable to waive the consent of the birth father with equal finality...." She contends that since the court did not serve the man whom she identified as putative father, B.M., it was without jurisdiction to hold the hearing, and thus that the waiver of her consent was improper.[4]

D.C.Code § 16–304(b)(2)(A) provides that "[c]onsent to a proposed adoption of a person under eighteen years of age is necessary ... from both parents, if they are both alive." Immediately after an adoption petition is filed, "due notice of pending adoption proceedings shall be given to each person whose consent is necessary thereto...." D.C.Code § 16–306(a). A putative father is not required to prove that he is, in fact, the biological father to be entitled to notice of a pending adoption proceeding. *See In re T.M.*, 665 A.2d 207, 210 (D.C.1995). The consent of either biological parent to an adoption may be

---

3. The passages quoted in the preceding paragraph are taken from this order.

4. Appellant makes no other challenge to the court's decision to waive her consent under D.C.Code § 16–304(d).

waived, however, when the court finds that the parent has abandoned the prospective adoptee, or when the parent cannot be located "after such notice as the court directs." D.C.Code § 16–304(d). The failure to notify a natural father of an adoption proceeding in disregard of the statutory requirement "would appear, without more, to violate his right to due process." *In re M.N.M.*, 605 A.2d 921, 928 (D.C. 1992).

Notice to a party whose consent is required "shall be given by summons, by registered letter sent to the addressee only, or otherwise as ordered by the court." D.C.Code § 16–306(a). The Superior Court Adoption Rules authorize the court to employ additional methods of service on a required party. Rule 4(e)(3) provides that when the court determines that service by registered mail or by a special process server or a United States Marshal will not be effective, it may order service by "posting or publication of the notice."

■■■ The District of Columbia and appellees T.J.L. and B.J.L. contend, and we agree, that Z.W. does not have standing to object to any deficiencies (assuming there were any, which we need not decide) in the service on B.M. of the notice and order to show cause. To resolve questions of standing, this court customarily looks to "'federal standing jurisprudence, both constitutional and prudential.'" *York Apartments Tenants Ass'n v. District of Columbia Zoning Comm'n*, 856 A.2d 1079, 1083–1084 (D.C.2004) (citations omitted). Prudential standing principles teach us that a party "may assert only [her] own legal rights, may not attempt to litigate generalized grievances, and may assert only interests that fall within the zone of interests to be protected or regulated by the statute or constitutional guarantee in question." *Community Credit Union Services, Inc. v. Federal Express Services Corp.*, 534 A.2d

331, 333 (1987) (citation and internal quotation marks omitted). Stated more broadly, "In the ordinary course, a litigant must assert his or her own legal rights and interests, and cannot rest a claim to relief on the legal rights or interests of third parties." *Powers v. Ohio*, 499 U.S. 400, 410, 111 S.Ct. 1364, 113 L.Ed.2d 411 (1991) (citations omitted).

Z.W. does not contend that she did not receive the required notice of the adoption proceeding; indeed, she could not make such an assertion, for she was personally served by the CFSA investigator. Nor does she assert that her ability to challenge the court's waiver of her consent to adoption was compromised by, or that the court's decision to waive her consent was linked to, any lack of notice to B.M. Rather, her argument, in plain terms, asserts B.M.'s right to receive notice of the adoption petitions and of the hearing. Although Z.W. correctly states that the consent of both biological parents is required for the court to grant an adoption petition and that both parents are entitled to notice, she cites no authority—and we are aware of none—indicating that she has standing to assert the legal or constitutional rights of B.M. (even assuming he was the twins' biological father, which was never actually proved). Under *York Apartments*, 856 A.2d at 1084, and many other cases, Z.W. is without standing to complain about any lack of notice to B.M., since she is not asserting a legal right that belongs to her. Only B.M. himself can claim error in this regard, and he, through counsel, has filed a statement that he "takes no position in this appeal." Thus Z.W. is not entitled to reversal based on any failure of the trial court to provide notice of the adoption proceedings to the twins' putative father.

### B. *The Trial Court's Consideration of the Competing Adoption Petitions*

Three of appellant's four arguments on appeal challenge the trial court's decision

to grant the adoption petition of Mr. and Mrs. L. We shall consider each argument separately.

### 1. Appellant's Participation in the Adoption Proceedings

■ Z.W. argues that although her consent to the adoption had been waived, the trial court erred in ruling that she did not have standing to participate in the adoption proceedings since her parental rights had not yet been terminated. She contends that even though she did not express a preference between the competing adoption petitions, she "was improperly denied standing to fully participate in the issues that were probative of which petition was in the best interest of the children."

■ The trial court bifurcated the proceedings, separately considering the waivers of consent and the adoption petitions. This course of action is permissible under Superior Court Adoption Rule 42(c).[5] Appellant correctly states that the court's decision to waive her consent to the adoption did not terminate her parental rights. Rather, it is the granting of an adoption petition *after* the consent of the natural parent has been waived that "effectively terminates that parent's interest in the care, custody, and control of her child." *In re H.B.*, 855 A.2d 1091, 1098 (D.C.2004). Consequently, even when a biological parent's consent to adoption has been waived, she has an interest in the custody and care of her child until her parental rights have been terminated. As this court has explained:

> [U]nless it is established that the parent is not competent to make such a decision, a child and the natural parents share a vital interest in preventing erroneous termination of their natural rela-

tionship, and, therefore, a parent's choice of a fit custodian for the child must be given weighty consideration which can be overcome only by a showing, by clear and convincing evidence, that the custodial arrangement and preservation of the parent-child relationship is clearly contrary to the child's best interest.

*In re F.N.B.*, 706 A.2d 28, 31 (D.C.1998) (quoting *In re T.J.*, 666 A.2d 1, 11 (D.C. 1995)). Thus the trial court would have been required to give "weighty consideration" to any preference that Z.W. expressed for either of the adoption petitions. *Id.*

The problem here is that Z.W. did not express any preference. Her counsel told the trial court that Z.W. opposed both of the petitions, but that she had not indicated a preference between them. Initially counsel stated that she wished to be present during the adoption proceedings so that she could represent Z.W. in any subsequent appeal, but that she would not actively participate in the hearing. Nevertheless, counsel did pose questions to several of the witnesses called during the hearing, along with counsel for B.M., the putative father.

Appellant now asserts that she was denied the right to participate fully in the determination of which petition was in the twins' best interest, but she does not point to any specific limitations imposed on her participation by the trial court. The District of Columbia in its brief notes that the court sustained an objection by Mr. and Mrs. L. to allowing counsel for Z.W. to cross-examine Angela Baker Matthews, the CFSA Director. The court said that Z.W. "has no standing to ... take a posi-

---

5. Rule 42(c) provides that a trial judge in an adoption proceeding, "in furtherance of convenience or to avoid prejudice, or when con-
ducive to expedition and economy, may order the trial to be bifurcated as to one or more claims or issues."

tion with respect to the two petitioners," but ruled nonetheless that it would permit Z.W.'s attorney to ask questions that related directly to her client and her client's interest in the proceeding,

Assuming *arguendo* that Z.W.'s claim of restrictions on her participation in the proceedings refers to the court's refusal to let her counsel question Ms. Matthews, and assuming further (without deciding) that the trial court erred, we hold nevertheless that Z.W. is not entitled to any relief based on this claim of error. Appellant has not shown how any limitation placed on her questioning of Ms. Matthews in the course of a three-day hearing might have affected the result of the adoption proceeding. As a result, we can say "with fair assurance, after pondering all that happened without stripping the erroneous action from the whole, that the judgment was not substantially swayed by the error...." *See In re Ty. B.*, 878 A.2d 1255, 1266 (D.C.2005) (applying harmless error standard of review established in *Kotteakos v. United States*, 328 U.S. 750, 764–765, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946), to a claim of error in neglect proceedings).

### 2. The Court's Decision to Grant the Petition of Mr. and Mrs. L.

Appellant argues that the trial court abused its discretion in granting the adoption petition of Mr. and Mrs. L. because it impermissibly relied on only one factor in the best interest analysis, along with expert testimony concerning that factor; because its decision was not supported by a preponderance of the evidence; and because, acting as *parens patriae*, it should have further developed the evidence regarding T.J.L.'s desire to adopt the twins.

#### (a) Standard of Review

In deciding an adoption case, the trial court is required to determine, after reviewing the petition, the consents, and other evidence, whether the prospective adoptee is suitable for adoption by the petitioner; whether the petitioner can provide the adoptee with a suitable home and education; whether the proposed adoption is in the best interests of the child; and whether the petitioner has completed the required adoption forms. *See* D.C.Code § 16–309(b). We have often recognized, however, that the overriding consideration for the court is whether the adoption is in the best interests of the child. *See, e.g., Petition of D.I.S.*, 494 A.2d 1316, 1322 (D.C.1985) ("[t]he 'best interests of the child' standard has been the basis of decision in child custody cases in this jurisdiction since the beginning of [the twentieth] century").

"In the case of a contested adoption between two non-parents, the ultimate decision on whether granting a petition serves the adoptee's best interests is made by the preponderance of the evidence." *In re J.D.W.*, 711 A.2d 826, 830 (D.C.1998). The determination of what is in the best interests of the child is committed to the sound discretion of the trial court. *In re A.C.G.*, 894 A.2d 436, 443 (D.C.2006). "This standard limits our review to a determination of whether 'the trial court has exercised its discretion within the range of permissible alternatives, based on all relevant factors and no improper factor.'" *In re Baby Boy C.*, 630 A.2d 670, 683 (D.C.1993) (quoting *In re R.M.G.*, 454 A.2d 776, 790 (D.C.1982)). The best interests inquiry is fact-intensive and must be based on evidence pertinent to each particular child. *In re L.W.*, 613 A.2d 350, 355 (D.C.1992). The trial court's findings of fact are entitled to great deference on appeal; we cannot set them aside "unless they are plainly wrong or without any evidentiary foundation." *In re Baby Boy C.*, 630 A.2d at 683.

### (b) *The Twins' Best Interests*

 The trial court determined that the twins were suitable for adoption and that both sets of petitioners were fit to adopt them and could provide them with a good home and education, the factors outlined in D.C.Code § 16–309(b)(1) and (2). The determining factor in the court's analysis was the best interests of the prospective adoptees. *See* D.C.Code § 16–309(b)(3). In deciding which of the competing adoption petitions would most serve the twins' best interests, the trial court applied the statutory factors, outlined in D.C.Code § 16–2353(b), which are also used in proceedings to determine whether termination of the parent-child relationship is in the child's best interests.

Appellant argues that the trial court based its best interests decision on consideration of only one factor, namely, "that the one-year-old twins had been in B.L.'s care since birth," *see* D.C.Code § 16–2353(b)(1), and abused its discretion by failing to consider other relevant factors. The record does not support this argument.

Our examination of the record reveals that the court considered several factors in concluding that granting Mr. and Mrs. L.'s adoption petition would be in the best interests of the children: (1) their "need for continuity of care and caretakers and for timely integration into a stable and permanent home, taking into account the differences in the development and the concept of time of children of different ages";[6] (2) "the physical, mental, and emotional health of all individuals involved to the degree that such affects the welfare of the child";[7] (3) "the quality of the interaction and interrelationship of the child with his or her parent, siblings, relative[s], and/or caretakers, including the foster parent";[8] (4) the position of the Child and Family Services Agency; (5) the financial stability of the petitioners; (6) the ages of the petitioners; and (7) the presence of other adopted children in Mr. and Mrs. L.'s home. The court's order demonstrates that it relied primarily on the first, third, sixth, and seventh of these factors.

In *In re D.R.M.*, 570 A.2d 796, 804 (D.C.1990), we noted that the statute "provides no specific guidance" concerning the best interests factor, a standard which has an "inherently 'elastic' nature...." As a result, we held that a trial judge was permitted to "consider any factor which appears relevant under the circumstances to allow the judge 'to make an informed and rational judgment, free of bias and favor, as to the least detrimental of the available alternatives.'" *Id.* (quoting *In re J.S.R.*, 374 A.2d 860, 863 (D.C.1977)). Each case concerning the best interests of a child must be decided on its own terms. *Petition of D.I.S.*, 494 A.2d at 1325.

Our case law fully persuades us that the trial court in this case, in making its best interests determination, did not abuse its discretion. It has long been recognized that when a trial court has to decide between adoption petitions from two qualified families, what is in the child's best interests is a "highly discretionary call...." *In re J.D.W.*, 711 A.2d at 834.[9] The court here did not base its decision on

---

**6.** D.C.Code § 16–2353(b)(1).

**7.** D.C.Code § 16–2353(b)(2).

**8.** D.C.Code § 16–2353(b)(3).

**9.** As indicated earlier, because appellant expressed no preference in the trial court between the two sets of adoption petitioners (instead opposing both petitions), the "weighty consideration" of any such preference by a biological parent required under *In re F.N.B.*, 706 A.2d at 31, does not come into play here.

only one factor, but on several, as we have outlined. When the record shows that a trial court has given thorough consideration to a variety of relevant factors in determining a child's best interests, we generally do not and cannot find an abuse of discretion. *See, e.g., Petition of D.I.S.*, 494 A.2d at 1323–1324. Only when a court fails to consider a statutorily required factor are we likely to find such abuse. *See In re Baby Girl D.S.*, 600 A.2d 71, 82 (D.C.1991). Appellant has not pointed to any such failure, nor has she shown that the court considered an improper factor.[10] We simply cannot find any basis for reversal, either abuse of discretion or other legal error, in the trial court's analysis.

### (c) *Sufficiency of the Evidence*

█ Appellant also argues that the trial court's decision was not supported, as it must be, by a preponderance of the evidence.[11] She is essentially questioning the factual foundation of the court's ruling. It is true, as we have said earlier in this opinion, that a trial court abuses its discretion when its decision is not supported by a firm factual foundation in the record. *See In re J.D.W.*, 711 A.2d at 832. In this case, however, the order granting the petition of Mr. and Mrs. L. contains detailed findings of fact which extend over more than eleven pages. Appellant has not identified any conclusion of the trial court

that is lacking in factual support, nor have we discovered any in our own independent review of the record. Under these circumstances, we hold that there was ample evidence to support, by a preponderance, the trial court's decision to grant the L.'s petition.

### (d) *The Consequences of T.J.L.'s Failure to Testify*

█ Finally, appellant contends that the trial court, acting as *parens patriae*, erred by failing to develop evidence regarding T.J.L.'s willingness and readiness to adopt the twins. This line of argument also encompasses appellant's assertion that the court erred in prohibiting Mr. and Mrs. J. from calling T.J.L., who did not testify, as an adverse witness.

Before granting the L.'s adoption petition, the trial court was required to satisfy itself that T.J.L. was "fit and able to give the prospective adoptee a proper home and education." D.C.Code § 16–309(b)(2). T.J.L. did not testify during the hearing, but the court did not draw any negative inferences regarding his commitment to the adoption from his failure to testify. Instead, the court, relying on *In re F.W.*, 870 A.2d 82 (D.C.2005), determined that the testimony of B.J.L. (T.J.L.'s wife) and other witnesses was sufficient.[12]

10. In particular, the court did not abuse its discretion by considering expert testimony about the potential impact on the twins' cognitive and emotional development of being removed from the custody of Mr. and Mrs. L., who had cared for them since birth. Such testimony is permissibly considered in adoption cases. *See, e.g., In re T.J.*, 666 A.2d at 8 (court heard expert testimony regarding "the extent of the child's attachment to the foster mother, and the harm to the child that would result if he were returned to his family").

11. The preponderance of the evidence standard "simply requires the fact finder to believe that the existence of the contested fact is

more 'plausible' than its nonexistence...." *In re Dortch*, 860 A.2d 346, 358 (D.C.2004); *see also In re J.S.R.*, 374 A.2d at 864 (preponderance standard "requir[es] the court to merely determine who has the most competent evidence").

12. In *In re F.W.*, two foster parents filed a petition for adoption, but only one of them testified at the adoption proceeding. The petitioner who testified died during the pendency of the appeal, but this court saw no need to reopen the proceedings, holding instead that "overall the testimony that was presented sufficiently addressed the statutory

This court has recognized that the judge in an adoption case "acts as *parens patriae* on the child's behalf, and 'should do her (or his) best to obtain all of the information needed to effect a judicious disposition.'" *In re J.L.*, 884 A.2d 1072; 1079 (D.C.2005) (quoting *In re A.R.*, 679 A.2d 470, 476 (D.C.1996)). We have also said, however, that "the judge's statutory duty to consider evidence of the child's opinion does not transform into any 'obligation to *investigate* the case on the judge's own initiative. . . .'" *In re J.L.*, 884 A.2d at 1079 (quoting *In re A.R.*, 679 A.2d at 475 (emphasis in original)). We held in *In re A.R.* that the trial judge did not abuse his discretion by failing to question the prospective adoptee directly because the parties were free to introduce other evidence regarding the child's opinion or to call the child as a witness. *See In re J.L.*, 884 A.2d at 1079 (explaining the holding of *In re A.R.*). In the same vein, we held that the trial court in *In re J.L.* did not err by failing to call the prospective adoptees as witnesses because "social workers presented evidence of the children's opinion, and there does not appear to have been any impediment prohibiting the mother from calling the children as witnesses, so as to more directly ascertain their opinions." *Id.*

In this case, counsel for Mr. and Mrs. J. attempted to call T.J.L. as an adverse witness[13] in order to cross-examine him about his desire to adopt the twins, but the court denied the request because the J.'s had not listed him as a witness in their pretrial statement. The court heard a proffer from counsel for the J.'s that T.J.L.

had told A.J. that if the adoption was his choice, he would "step aside," then ruled that it would not permit counsel to cross-examine T.J.L. on the basis of the proffer. This case clearly differs from *In re J.L.* and *In re A.R.*, in that here it was Mr. and Mrs. J., not appellant, who sought to call T.J.L. as an adverse witness. Consequently, we must affirm unless we conclude not only that the trial court erred in denying *Mr. and Mrs. J.'s* request to cross-examine T.J.L., but also that any such error entitles *appellant Z.W.* to relief. Z.W.'s counsel did not seek to cross-examine T.J.L. at trial, nor did counsel object to the court's ruling on the J.'s request to call T.J.L. to testify. Thus we are limited at best to plain error review. *See In re N.D.*, 909 A.2d 165, 172 (D.C.2006).

Even if we assume for the moment that the trial court's ruling was error, appellant has not established that "failure to correct it will result in a miscarriage of justice." *In re S.S.*, 821 A.2d 353, 358 (D.C.2003) (citations omitted). As in *In re F.W.*, the testimony of the other witnesses in this case addressed T.J.L.'s fitness to adopt the twins. J.L., an adopted son of Mr. and Mrs. L., testified about the way he was brought up in the L. family home. Cathy Freed, the L.'s neighbor, testified and provided her impressions of the L. family and the way in which they cared for their adopted children. B.J.L. also testified about her husband's physical and emotional health, his employment, his income, and the reasons why the couple wanted to adopt the twins. Given this factual record, there is no reason for us to depart from the reasoning of *In re F.W.* We hold ac-

factors with regard to both petitioners." 870 A.2d at 87 n. 4.

**13.** Superior Court Adoption Rule 43(b) permits parties to call an adverse party as a

witness and to interrogate the witness "by leading questions and contradict and impeach the witness in all respects as if the witness had been called by the adverse party. . . ."

cordingly that appellant, having failed to establish plain error, or indeed any error at all, is not entitled to any relief based on the trial court's denial of Mr. and Mrs. J.'s request to call T.J.L. and cross-examine him as an adverse witness.

III

For the foregoing reasons, the trial court's order granting the adoption petition of T.J.L. and B.J.L. is in all respects

*Affirmed.*