*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

## DISTRICT OF COLUMBIA COURT OF APPEALS

Nos. 16-FS-1244 & 16-FS-1245

IN RE PETITION OF J.B.S. & V.S.S.;
IN RE PETITION OF R.H.;

DISTRICT OF COLUMBIA, J.B.S. AND V.S.S.,
APPELLANTS;

R.H., S.C., AND T.C.,
APPELLEES.

Appeals from the Superior Court
of the District of Columbia
(13-ADA-167, 13-ADA-180, 09-NEG-350)

(Hon. Lloyd U. Nolan, Jr., Magistrate Judge)
(Hon. Anthony C. Epstein, Associate Judge)

(Argued June 12, 2018                    Decided September 10, 2020)

*Stacy L. Anderson*, Senior Assistant Attorney General, with whom *Karl A. Racine*, Attorney General for the District of Columbia, *Todd S. Kim*, Solicitor General at the time the brief was filed, and *Loren L. AliKhan*, Deputy Solicitor General at the time the brief was filed, were on the brief, for appellant the District of Columbia.

*Sharon A. Singh* for appellants J.B.S. and V.S.S.

*Mark R. Thomson*, with whom *Thomas A. Lorenzen* and *Robert B. Kornweiss* were on the brief, for appellee R.H.

*Kwame Willingham* for appellee S.C.

*Jerelyn F. Gladden* filed a Statement in Lieu of Brief for appellee T.C.

*Carmen McLean*, *Alisha Crovetto*, and *Ilana B. Gelfman* were on the brief for *amicus curiae* Children's Law Center.

*Stephanie Troyer*, *Meridel Bulle-Vu*, *Jonathan H. Levy*, and *David Carpman* were on the brief for *amicus curiae* The Legal Aid Society of the District of Columbia.

Before BLACKBURNE-RIGSBY, *Chief Judge*, and GLICKMAN, THOMPSON, BECKWITH, EASTERLY, MCLEESE, and DEAHL, *Associate Judges*.[*]

Opinion for the court by *Associate Judge* GLICKMAN.

Concurring opinion by *Associate Judge* EASTERLY at page 35.

GLICKMAN, *Associate Judge*: We have gone en banc to reconsider our so-called "weighty consideration" doctrine in contested child adoption proceedings. Appellants, joined by the Children's Law Center as amicus, urge us to abandon the doctrine or limit its application. Appellees, joined by amicus The Legal Aid Society, support its retention.

The "weighty consideration" doctrine requires a court deciding between competing adoption petitions to grant the petition that the child's biological parent favors unless the court finds "by clear and convincing evidence that the parent's

---

[*] At the time of oral argument, Associate Judge Fisher was a member of the en banc panel. On August 23, 2020, his status changed to Senior Judge. *See* D.C. Code § 11-705(c) (2012 Repl.).

choice of custodian is *clearly contrary* to the child's best interest."[1] "Weighty consideration" in effect establishes a strong presumption that the parent's preference is in the child's best interest—a presumption that determines who will adopt the child unless the non-favored petitioner proves that placement of the child with the parentally preferred petitioner "would be *detrimental* to the child[]'s best interest."[2] This presumption applies even when, as in the present case, the child was neglected and removed from his parent's care, and the court finds by clear and convincing evidence that the parent is unfit to care for the child. Compliance with the "weighty consideration" rule in this case led the Superior Court to deny a child the adoption it found to be in his best interests and instead to grant a competing petition that posed identifiable risks for the child's long-term welfare.

"Weighty consideration" is a judge-made rule. We have applied it in contested adoption proceedings to vindicate the "constitutionally protected interest in influencing their child's future" that we said even unfit parents have as long as their parental rights "remain intact."[3] This application of "weighty consideration"

---

[1] *In re K.D.*, 26 A.3d 772, 777 (D.C. 2011) (internal quotation marks omitted).

[2] *In re Ta.L.*, 149 A.3d 1060, 1084 (D.C. 2016) (en banc) (emphasis added).

[3] *In re T.W.M.*, 964 A.2d 595, 602 (D.C. 2009).

is controversial, however, and in our recent en banc decision in *In re Ta.L.*, a majority of the judges of this court expressed serious doubts as to its validity.[4]

We now decide that this court erred in requiring "weighty consideration" when the parents of a child up for adoption have been found, by clear and convincing evidence, to be unfit to raise the child. We agree with the objections identified in *In re Ta.L.*: "[I]f a parent has been deemed unfit, the parent does not have a constitutionally protected right to choose her child's adoptive parent or to have her preference be given any weight."[5] And, stripped of its constitutional patina, "weighty consideration" deference to an unfit parent in an adoption proceeding is incompatible with the "best interest of the child" standard and the statutory provisions governing adoption in the District of Columbia.[6] "Weighty consideration" impermissibly reverses the normal requirement, set forth in D.C.

---

[4] *See In re Ta.L.*, 149 A.3d at 1119 (separate opinion of Judges Glickman, Fisher, Thompson, and McLeese); *id.* at 1129 (separate opinion of Judges Beckwith and Easterly). The issue was not ripe for decision in *In re Ta.L.*, however.

[5] *Id.* at 1129 n.25 (opinion of JJ. Beckwith and Easterly).

[6] *Id.* at 1119 (opinion of JJ. Glickman, Fisher, Thompson, and McLeese).

Code § 16-309(b), that a court must find a proposed adoption to be "for the best interests of the prospective adoptee" in order to approve it.[7]

Henceforth, we hold, parents properly found by clear and convincing evidence to be unfit are not entitled to "weighty consideration" of their preferences in contested adoption proceedings. If their parental rights have not yet been terminated formally and finally, the parents may be heard in those proceedings, and they may have helpful information and a valuable perspective to contribute—but the court should give their views only such weight as it thinks they deserve in an unbiased determination of the child's best interest. Accordingly, in the present case, we vacate the adoption order and remand for further proceedings.

**I.**

The present appeal arises from competing petitions to adopt T.C., a neglected child removed from his mother's care when he was an infant. T.C.'s foster parents, appellants J.B.S. and V.S.S. ("the S's"), eventually petitioned to adopt him. His paternal grandmother, appellee R.H., filed a competing adoption petition. The child's birth parents consented to the grandmother's petition and

---

[7] D.C. Code § 16-309(b)(3) (2012 Repl. & 2020 Supp.).

withheld consent to the petition of the foster parents. After a lengthy trial, Magistrate Judge Nolan found by clear and convincing evidence that T.C.'s parents were unfit to care for the child. The magistrate judge found it in T.C.'s best interest to be adopted by the S's. However, after further proceedings that we describe below, Magistrate Judge Nolan concluded that "weighty consideration" for the parents' preference required him to grant R.H.'s petition to adopt T.C. On review, Associate Judge Epstein upheld that determination. The District and the S's took the present appeals to this court.[8]

T.C. was removed from the care of his mother, appellee S.C., when he was less than two months old. His biological father, D.H., was an unwed, non-custodial parent who was not involved with T.C.'s care at that time.[9] After a trial in which the court found T.C. to be a neglected child, the Child and Family Services Agency (CFSA) placed T.C. with his mother's aunt. The Superior Court granted the aunt's petition to become T.C.'s permanent guardian.

---

[8] After granting initial hearing en banc, this court stayed enforcement of Judge Epstein's order pending appeal.

[9] D.H. suffered from a serious illness. He participated in the proceedings below but passed away during the course of this appeal.

When T.C. was two years old, however, he suffered severe burns to over 45 percent of his body after his great-aunt left him in his mother's care. T.C.'s father learned of this. He and the District moved to terminate the guardianship. T.C. was admitted to Shriners Hospital in Boston, Massachusetts, for treatment of his burns. His hospitalization lasted two months. In January 2012, T.C. was discharged from the hospital and placed in foster care with the S's. He has remained in their care to the present day.

The S's petitioned to adopt T.C. in September 2013, after his permanency goal had been changed to adoption. At that time, he was four years old and had been in their care for eighteen months. A week later, T.C.'s paternal grandmother, R.H., filed a competing petition. T.C.'s parents did not seek custody of him. They consented to R.H.'s petition and opposed adoption by the S's.

In the ensuing trial, Magistrate Judge Nolan heard testimony from over twenty witnesses, including T.C.'s parents S.C. and D.H., the adoption petitioners, multiple social workers, and mental health professionals. At the conclusion, the magistrate judge found by clear and convincing evidence that T.C.'s mother abandoned him; that his father failed to grasp the opportunity to parent T.C. and

thus "effectively" abandoned him; and that the parents were neither willing nor able to care for him themselves and so were not "fit" to care for T.C.[10]

Regarding the question of adoption, Magistrate Judge Nolan acknowledged the parents' preference for R.H. He did not consider it an informed preference, as he found that S.C. and D.H. were uninterested in or ignorant of T.C.'s hospitalization, rehabilitation, and care needs, and that they lacked knowledge of the adoption petitioners and their qualifications.[11] Having found the parents essentially abandoned T.C., the magistrate judge ruled that their consents to T.C.'s adoption were not required by law,[12] and that their preference for R.H. was not entitled to "weighty consideration."

---

[10] *See In re S.L.G.*, 110 A.3d 1275, 1287 (D.C. 2015) ("[I]f the natural parent is unable or unwilling to meet the child's critical needs or maintain an appropriate parental relationship with the child, . . . that would mean the parent is unfit to care for that child.").

[11] S.C. testified that she did not consent to the S's' petition because she wanted T.C. to be raised by "family" and believed she would be allowed to visit him if he were placed with R.H. And D.H. favored placement with R.H. because he thought his mother had done a good job raising him.

[12] *See* D.C. Code § 16-304(d) (2012 Repl.) ("When a parent . . . has abandoned the prospective adoptee and voluntarily failed to contribute to his support for a period of at least six months next preceding the date of the filing of the petition, the consent of that parent [to the child's adoption] is not required.").

The magistrate judge proceeded to assess which petition was in T.C.'s best interest by carefully considering the relevant termination-of-parental-rights (TPR) factors set forth in D.C. Code § 16-2353(b) (2012 Repl.).[13]  As relevant to this case, these factors require the "best interests" decision to be guided by the child's need for "continuity of care" and "timely integration into a stable and permanent home"; the child's physical, mental, and emotional health and needs, and the health of others insofar as that may affect the child's welfare; the "quality" of the child's interaction and relationships with the adoption petitioners and others; and, to the extent feasible, the child's opinion of his own best interests.

Magistrate Judge Nolan found neither the S's nor R.H. to be unfit or to be disqualified from consideration for any other reason; they were "[e]qually" in good health and had substantial parenting experience.  But he found that every one of the relevant statutory factors weighed, almost always "heavily," in favor of granting the petition of the S's, rather than the petition of R.H., in T.C.'s best interests.  For purposes of this opinion, we need not recapitulate the findings on each factor in

---

[13] *See In re S.M.*, 985 A.2d 413, 416 (D.C. 2009) ("[T]he court making the decision on what is in the child's best interest must be guided by the factors set forth in § 16-2353(b)."); *see also In re S.L.G.*, 110 A.3d at 1285.

detail. In connection with the legal question before us, a few findings are especially noteworthy.

The magistrate judge found that over the course of two and a half years, the S's had provided T.C. with "a level of stability and consistency he ha[d] not previously known" in "a loving, well-run household," and that they had "demonstrated their commitment to [T.C.] and their staying power in the face of [T.C.'s] significant injuries and what would follow as his care regimen for his injuries." Among other things, the S's had shown themselves "more than capable of ensuring that [T.C.] attends all necessary appointments related to his burns," including return visits to the hospital in Boston, as well as his "routine medical and dental appointments[,] and managing his behavior in the home." And T.C. had "formed a bond" and a "loving" and "positive" relationship with the S's that "can serve as a stepping stone to the development of a secure attachment" with them. Based on expert psychological testimony, the magistrate judge found that "the sooner [T.C.] is able to feel safe and secure in a loving and nurturing home, the better the outcome will be for him"; any further "delay in achieving permanency" would "diminish the chances that [T.C.] will be able to overcome his chaotic early years" and "could be incredibly detrimental to [his] emotional well-being and development."

Magistrate Judge Nolan found that R.H. did not come forward early on "to fulfill this child's need for continuity of care and timely integration into a stable and permanent home," and that T.C. did not have as strong or deep a bond with R.H. as he had with the S's. Although R.H. and her family also love T.C. and he "may enjoy" his visits with them, there was testimony that the visits were stressful for him. The magistrate judge concluded that "placement with R.H. could be successful with the right services in place and a transition period," but the placement with the S's was working and removal of T.C. from their care "could lead to concerns with [T.C.'s] mental or emotional health."

Finding it in T.C.'s best interest to be adopted by the S's, the magistrate judge waived the parents' consent to the S's petition, granted it, and dismissed the petition of R.H.

R.H. and T.C.'s parents moved in Family Court for review of this decision.[14] The appeal went to Judge Epstein. He held that this court's binding precedents required the magistrate judge to give "weighty consideration" to the parents' preference. He therefore remanded the record for Magistrate Judge Nolan to make

---

[14] *See* D.C. Code § 11-1732(k) (2012 Repl. & 2020 Supp.); D.C. Fam. Ct. R. D(e)(1)(A).

additional findings clarifying whether he would grant R.H.'s petition after giving the requisite deference to the parents' choice.

On remand, Magistrate Judge Nolan again found that all the relevant considerations listed in D.C. Code § 16-2353(b) weighed in favor of the S's. He adhered to his finding that it was in T.C.'s best interest to grant their petition. But Magistrate Nolan stated that he "did not find clear and convincing evidence that the parent[s'] choice of adoption by R.H. would be clearly contrary to the child's best interest." Consequently, though he said he did not believe R.H. was "the best choice," he concluded that "if the Court gave weighty consideration to the biological parents' adoption consent, R.H.'s adoption petition would be granted."

The record, as thus augmented, returned to Judge Epstein. He accepted the magistrate judge's findings and ruled that the "weighty consideration" doctrine required him to grant R.H.'s petition "even though a preponderance of the evidence prove[d] that [T.C.] would do better staying with the [S's]." But Judge Epstein explained that he deemed it highly problematic and anomalous that the "weighty consideration" doctrine "can force the trial court to grant the adoption petition preferred by an unfit parent even if a preponderance of the evidence proves that it would be in the child's best interests to be adopted by another petitioner." In

his decision, Judge Epstein encouraged this court to reevaluate a doctrine that, as he described it,

> gives an unfit biological parent this power no matter how unfit he is, how little interest he has shown in the child, how ignorant he is of the child's needs, or how ill-informed or insincere or even malicious his preference for one caregiver is. Even if the parent's history of catastrophically bad decisions about the child persuaded the trial court that the parent is unfit, the trial court must defer to the parent's asserted preference about who should care for his neglected child during the rest of his childhood and who can best help the child heal from trauma inflicted by that parent.

## II.

### A.

The "weighty consideration" doctrine is an exception to the longstanding general rule that, in a contest for adoption between two (suitable) non-parents, "the ultimate decision on whether granting a petition serves the adoptee's best interests is made by the preponderance of the evidence."[15]

---

[15] *In re T.J.L.*, 998 A.2d 853, 860 (D.C. 2010) (quoting *In re J.D.W.*, 711 A.2d 826, 830 (D.C. 1998)); *see also In re D.I.S.*, 494 A.2d 1316, 1326 (D.C. 1985) (explaining that a preponderance standard is "most appropriate" when neither adoption petitioner "can claim a constitutionally protected interest in
*(continued…)*

We created this exception in 1995, in the case of *In re T.J.*[16] It was an atypical case involving a mother who appreciated that her chronic mental illness was impairing her ability to take personal care of her child. She undertook to deal with that situation by allowing the child to be placed temporarily in foster care and thereafter by designating a "suitable and willing custodian"—the child's great aunt—to care for the child in the hope of preserving the parent-child and familial relationship.[17] In deciding between a custody petition filed by the aunt and a competing adoption petition filed by the foster mother, the trial court found the foster mother's petition to be in the child's best interest. On appeal, this court concluded that the court had erred in resolving the issue by a preponderance of the evidence.

---

*(…continued)*
custody of the child, and both share a common goal: to determine the placement that is in the best interests of the child").

[16] 666 A.2d 1 (D.C. 1995).

[17] *Id.* at 11. We note that the subsequently-enacted Standby Guardianship Act of 2002, D.C. Code §§ 16-4801–4810 (2012 Repl. & 2020 Supp.), now provides a procedural mechanism—the designation of a standby guardian—for parents like the mother in *In re T.J.* who are "periodically incapable of caring for the needs of a child due to the parent's incapacity or debilitation resulting from illness . . . to make long-term plans for the future of a child without terminating or limiting in any way the parent's legal rights." *Id.* § 16-4801(1).

This conclusion was grounded in the constitutionally protected liberty interest that biological parents have in the "care, custody, and management of their children."[18] "Unless a child's parents have in some manner *forfeited* the right to direct the upbringing of their children," the court stated, "the parents have the right to determine what is in their child's best interest."[19] On that premise, the court held that

> unless it is established that the parent is not competent to make such a decision, a child and the natural parents share a vital interest in preventing erroneous termination of their natural relationship, and, therefore, a parent's choice of a fit custodian for the child must be given weighty consideration which can be overcome only by a showing, by clear and convincing evidence, that the custodial arrangement and preservation of the parent-child relationship is clearly contrary to the child's best interest.[20]

This is the initial and oft-repeated formulation of what has come to be known as the "weighty consideration" doctrine.

---

[18] *Id.* (quoting *Santosky v. Kramer*, 455 U.S. 745, 753 (1982)).

[19] *Id.* at 14 (emphasis added).

[20] *Id.* at 11.

Thus, in its original incarnation, the "weighty consideration" doctrine was limited to situations in which its application would permit the preservation of a viable relationship between a fit parent and her child. The court took pains to say it was "dealing *only* with the custody wishes of a parent who, *through no fault of her own*, is unable to care properly for her child" by herself.[21] There was no finding that the disabled mother in *In re T.J.* had "forfeited her right" to direct the upbringing of her child or, as we now would say, that she was unfit to parent with appropriate and available assistance; she had "not been adjudicated as a mother who failed, voluntarily, to provide proper parental care."[22] On the contrary, it was undisputed that, despite her illness, she "always ensured" that her child's needs were met and was competent to "plan for her child's future."[23]

---

[21] *Id.* at 12 n.10 (emphasis added).

[22] *Id.* at 10, 14. When this court decided *In re T.J.*, our cases did not require an explicit threshold finding, by clear and convincing evidence, of parental unfitness to care for a child as a precondition to the involuntary termination of parental rights and an adoption without parental consent based on the child's best interest. It was not until two decades later that this court, in *In re S.L.G.* and *In re Ta.L.*, clarified the general need for such a threshold determination. See *infra* text accompanying note 43. As that requirement is now settled, a TPR or contested adoption case in the peculiar posture of *In re T.J.* is unlikely to recur.

[23] *Id.* We express no view as to whether the evidentiary record in *In re T.J.* could have supported a valid determination of parental unfitness. We note, however, that "[t]he fact that a parent has a mental illness does not, in and of itself,

*(continued…)*

The court in *In re T.J.* clearly did not intend a requirement of "weighty consideration" deference to the adoption preference of a parent found by clear and convincing evidence to have "forfeited her rights" or (as we now would say) be unfit to parent her child. Fourteen years later, however, this court extended the benefit of "weighty consideration" to unfit parents in *In re T.W.M.*[24]

Unlike the mother in *In re T.J.*, the biological parents in *In re T.W.M.* did not seek to preserve a parent-child relationship or contest the grounds for terminating their parental rights at the conclusion of the TPR/adoption proceeding. They had little if any relationship with their neglected child, and they admittedly were unable to care for her due to "self-inflicted infirmities, namely incarceration and substance

---

*(…continued)*
constitute a lack of fitness to parent a child," *In re D.R.M.*, 198 A.3d 756,764 (D.C. 2018), and that with reasonable accommodations required by the Americans with Disabilities Act and other federal and District law, it is possible the mother's mental disability might not have rendered her unable to care properly for her child. *See In re H.C.*, 187 A.3d 1254, 1256 (D.C. 2018) ("The ADA and the Rehabilitation Act . . . protect parents with disabilities, including intellectual and psychiatric disabilities, from discriminatory curtailment of their parental rights. The statutes require the provision of reasonable accommodations in order to afford such parents the same opportunities as other parents have to achieve family reunification.").

[24] 964 A.2d 595 (D.C. 2009).

abuse."[25]  Even so, this court declared, parents have "interests in dictating their child's future," and their exercise of those interests "does not hinge on the quality of the parents' involvement in the child's life or the parents' custodial relationship with the child."[26]  Although "natural parents lose their fundamental interests in dictating their child's future upon a formal termination of parental rights," the court said, as long as their "parental rights remain intact, their indiscretions or parenting failures alone will not act to automatically sever their right to join in decision-making related to the rearing of their child."[27]  Therefore, the court concluded, "[b]ecause their parental rights were intact at the time of the adoption proceeding, [the parents] had not forfeited their right to choose a caregiver for [their child] merely because they were unfit to personally parent the child."[28]  Accordingly, the court held, the parents were entitled to the same "weighty consideration" of their preferred adoption petitioner as the mother in *In re T.J.*,[29]

---

[25] *Id.* at 603.

[26] *Id.* at 601 n.6.  In this respect, the court emphasized, it made no difference that the parents might have failed even to grasp their opportunity interest in parenting the child.  *Id.* (concluding that the "concept of 'grasping opportunity interest' has no place here").

[27] *Id.* at 602.

[28] *Id.* at 603.

[29] *Id.*

even though they would not be entitled to such consideration upon termination of their parental rights based on their unfitness.[30]  Moreover, the trial court "cannot deny the parent's choice weighty consideration simply because it does not approve of his or her calculations," or "because it doubt[s] that the parents sufficiently reflected upon their decision and thoroughly investigated [their preferred petitioner's] fitness as a parent."[31]  So not only did *In re T.W.M.* extend the benefit of "weighty consideration" to unfit parents, it also deviated from *In re T.J.*'s emphasis on the mother's thoughtful arrangements for the proper care of her child by mandating judicial deference even to uninformed and unreasonable parental choices of a caregiver for their child.

Subsequent decisions of this court have reaffirmed the holding of *In re T.W.M.* that biological parents are entitled to "weighty consideration" even if they are proved by clear and convincing evidence to be unfit to parent.[32]  But the

---

[30]  *See id.* at 603 n.8 ("Weighty consideration does not apply in cases where parental rights have been terminated." (citing *In re A.T.A.*, 910 A.2d 293, 297 n.3 (D.C. 2006), and D.C. Code § 16-2361(b) (eliminating parent's right to participate in adoption once parental rights are terminated)).

[31]  *Id.* at 603 n.9.

[32]  *See, e.g.*, *In re K.D.*, 26 A.3d 772, 777-78 (D.C. 2011); *In re C.A.B.*, 4 A.3d 890, 900-01 (D.C. 2010); *see also id.* at 901 n.11 ("This would, *a fortiori*, apply with equal force to a finding that the parent has 'abandoned' the child
*(continued…)*

soundness of this extension of *In re T.J.* has been questioned, as Judge Epstein questioned it in this case. Notably, as mentioned earlier, six of the judges on this court raised that question in their separate opinions in *In re Ta.L.*, though the en banc decision in that case did not decide the issue. Together, the separate opinions denied any constitutional ground for giving "weighty consideration" to unfit parents,[33] and argued that the "weighty consideration" rule "conflicts not only with D.C. Code § 16-309, but also with the principle that the child's best interest is the *paramount* consideration in adoption decisions, and it ignores the vital interests of the child."[34]

Appellants make these same constitutional and statutory challenges to the "weighty consideration" rule in the present case, and the issue of whether such deference is due to an unfit parent in a contested adoption proceeding is squarely posed. For the reasons that follow, we are persuaded that this court erred when it extended the benefit of "weighty consideration" to parents found to be unfit by

---

*(…continued)*
pursuant to D.C. Code § 16-304(d), which also requires a finding by clear and convincing evidence.").

[33] *See* 149 A.3d at 1129 n.25 (opinion of JJ. Beckwith and Easterly).

[34] *Id.* at 1119 (opinion of JJ. Glickman, Fisher, Thompson, and McLeese) (emphasis in the original).

clear and convincing evidence. The Constitution does not require such deference, and it is incompatible with our adoption statute and the best-interests-of-the-child assessment that statute dictates.

**B.**

The "weighty consideration" doctrine is premised on the constitutionally protected "fundamental right of parents to make decisions concerning the care, custody, and control of their children."[35] This right is not absolute, but it assures that "so long as a parent adequately cares for his or her children (i.e., is fit), there will normally be no reason for the State to inject itself into the private realm of the family to further question the ability of that parent to make the best decisions concerning the rearing of that parent's children."[36] Accordingly, as a general rule, "parents are constitutionally entitled to a hearing on their fitness" before their parental rights may be terminated against their will.[37] In view of what is at stake for parents and children alike, due process requires the state to "provide the parents

---

[35] *Troxel v. Granville*, 530 U.S. 57, 66 (2000); *accord Santosky*, 455 U.S. at 753.

[36] *Troxel*, 530 U.S. at 69-70.

[37] *Stanley v. Illinois*, 405 U.S. 645, 658 (1972).

with fundamentally fair procedures"[38] in such a hearing and to prove parental unfitness "by at least clear and convincing evidence."[39]

But as the Supreme Court held in *Santosky v. Kramer*, when the state shoulders that burden and properly establishes parental unfitness, the Constitution permits it to "sever *completely and irrevocably* the rights of parents in their natural child" and thereby "free the child for adoption" without parental consent.[40] The court then may rule "solely on the basis of the best interests of the child, [with] no obligation to consider the natural parents' rights in selecting dispositional alternatives."[41] And because the parents' constitutionally protected liberty interest in preserving the parent-child relationship is no longer implicated at that point, the

---

[38] *Santosky*, 455 U.S. at 745.

[39] *Id.* at 748.

[40] *Id.* at 747-48 (emphasis added).

[41] *Id.* at 760 (internal quotation marks omitted); *see also Lehr v. Robertson*, 463 U.S. 248, 262 (1983) (holding that where a biological parent has failed to grasp his opportunity interest in parenting his child, "the Federal Constitution will not automatically compel a State to listen to his opinion of where the child's best interests lie"). For the purposes of the "weighty consideration" question addressed in this opinion, we treat a determination that a birth parent failed to grasp his parenting opportunity interest as functionally equivalent to a determination of abandonment and/or other unfitness.

determination of what option would be best for the child need only be made by a preponderance of the evidence.[42]

Consistent with these constitutional principles, our cases now generally require that "the trial court make a parental unfitness determination before undertaking a 'best interests of the child' analysis."[43] "Parental 'fitness' is not a statutorily defined term in this jurisdiction," but we have explained that it "refers to the parent's intention and ability over time to provide for a child's wellbeing and meet the child's needs," and that a determination of unfitness constitutes a determination that the parent is and will remain unable or unwilling to "care for the child in a way that does not endanger the child's welfare."[44] After a determination of parental unfitness, the trial court may, pursuant to D.C. Code § 16-2353(a), enter an order terminating the parent-child relationship if it finds "that the termination is in the best interests of the child"; and, as we discuss *infra*, our

---

[42] *Santosky*, 455 U.S. at 761-66.

[43] *See In re Ta.L.*, 149 A.3d at 1081-83; *see also In re S.L.G.*, 110 A.3d at 1288 (explaining "the need for a threshold determination" of parental unfitness).

[44] *In re S.L.G.*, 110 A.3d at 1286-87 (internal quotation marks omitted).

adoption statute similarly authorizes the court to approve an adoption in the child's best interests.[45]

Thus, if the trial court validly determines that a parent is unfit in accordance with *In re Ta.L.* and *Santosky*, the Due Process Clause does not require "weighty consideration" of an unfit parent's preference between competing petitions to adopt her child. In fact, it does not require any consideration of that parent's preference. And as long as a valid determination of parental unfitness (among other things, based on clear and convincing evidence) precedes the decision on the competing petitions, it makes no difference that the parent's rights are, as a technical matter, still "intact" *during* a combined TPR-adoption proceeding and are not formally terminated until the end. That is simply a matter of form that does not impinge significantly on the parents' constitutional rights; in fact, it expands those rights by allowing the parents to participate and the court to consider their views on the issue of which petition to grant.[46]

---

[45] In *In re Ta.L.*, this court recognized that there might be "truly exceptional circumstances" in which a parent's rights could be terminated without a determination of unfitness, 149 A.3d at 1088, but as this case does not present such a scenario we do not discuss how that circumstance would interact with our holding in this case.

[46] Whereas if the hearing on the competing adoption petitions is delayed until after the formal termination of the parents' rights based on their unfitness, the

*(continued…)*

*(…continued)*

parents would have no right to participate in the hearing or be heard at all, let alone a right to "weighty consideration" of their preferred candidate. *See* D.C. Code § 16-2361(b) ("When an order terminating the parent and child relationship has been issued, the parent whose right has been terminated shall not thereafter be entitled to notice of proceedings for the adoption of the child by another nor shall such parent have any right to object to the adoption or otherwise to participate in the proceedings"); *In re T.W.M.*, 964 A.2d at 603 n.8.

No party in the present case objected to the consolidation of the TPR and adoption determinations in a single proceeding, and no issues as to the procedures followed in that proceeding are before us at this juncture. As a constitutional matter, "the nature of the process due in parental rights termination proceedings turns on a balancing of the 'three distinct factors' specified in *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976): the private interests affected by the proceeding; the risk of error created by the State's chosen procedure; and the countervailing governmental interest supporting use of the challenged procedure." *Santosky*, 455 U.S. at 754. There has been no showing, and we have no reason to conclude, that the combined TPR-adoption proceeding in this case failed the *Mathews* test.

While the question is not presented in this appeal, we recognize that in some circumstances it may be advisable, or legally necessary, to hold a TPR trial prior to an adoption trial—primarily, where doing so will help to expedite the process of achieving permanency for the child. *See, e.g.*, *In re Tw.P.*, 756 A.2d 402, 411 (D.C. 2000) ("Because prospective adoptive parents are reluctant to consider an 'at risk' adoption, where a natural parent may oppose and contest their adoption efforts, the termination of parental rights is critical to increasing the chances of adoption and consequently, to increasing the likelihood that the best interests of the children will ultimately be served."); D.C. Code § 16-2354(b)(3) (2012 Repl. & 2020 Supp.) (requiring the District to file a TPR motion on behalf of child in court-ordered custody under specified circumstances). On the other hand, in cases like the present one, in which parental rights have not been terminated and there are pending adoption petitions, a combined proceeding will likely be preferable to avoid prejudicial delay (as well as to allow the parents to be heard on the merits of the competing adoption petitions). *Cf. In re Baby Girl D.S.*, 600 A.2d 71, 87 (D.C. 1991) ("[U]nless convincing reasons for separate proceedings are offered, one could argue as a matter of virtually self-evident common sense that all termination and adoption issues should be considered by one judge in the same proceeding,

*(continued…)*

Confirming our conclusion on this constitutional question is the fact that the District of Columbia appears to be the only jurisdiction that has accorded any special weight or deference to an unfit parent's preference in choosing between competing adoption petitioners. The only jurisdiction we are aware of in which unfit parents even advanced a constitutional claim of entitlement to such deference is Massachusetts. That state's highest court rejected it. It held that an adoption plan "proposed by a parent [found to be unfit] is not entitled to any artificial weight in determining the best interests of the child," that the biological parents have no "constitutional right to nominate a substitute caretaker for their child" after their unfitness is established, and that "[p]resented with more than one potential adoption placement, the judge's task is to determine which plan will serve the best interests of the child, not to afford any particular weight to either plan."[47] We agree with each of those holdings.

---

*(…continued)*
where all interested parties are present and can be subject to scrutiny at the same time, subject to sequencing of issues and related evidence in the court's sound discretion.").

[47] *In re Adoption of Hugo*, 700 N.E.2d 516, 521 & n.9 (Mass. 1998) (internal quotation marks omitted).

## C.

Our adoption statute, D.C. Code § 16-309(b), requires the trial court to be "satisfied" that a proposed adoption "will be for the best interests of the prospective adoptee" in order to approve it. Our cases have reiterated that the child's best interests are "paramount in adoption cases."[48] And appreciating the momentousness of the decision for "the future life of an innocent child,"[49] we have insisted that the "best interests" determination be "an informed and rational judgment, free of bias and favor," and "supported by substantial reasoning . . . drawn from a firm factual foundation in the record."[50] As stated in *In re T.J.* itself, it "cannot be accomplished by imposing formulas, doctrines, presumptions, or a rigid hierarchy of placement alternatives."[51]  "[I]t is not asking too much to demand that a court, in making a determination as to the best interest of a child,

---

[48]  *In re C.A.B.*, 4 A.3d at 899; *see also In re Ta.L.*, 149 A.3d at 1081 (describing the best interest of the child as "the decisive factor in determining whether to ultimately terminate parental rights" following a determination of parental unfitness).

[49]  *Coles v. Coles*, 204 A.2d 330, 332 (D.C. 1964).

[50]  *In re D.I.S.*, 494 A.2d at 1323 (internal quotation marks omitted).

[51] *In re T.J.*, 666 A.2d at 15; *see also, e.g.*, *In re D.I.S.*, 494 A.2d at 1325 ("We have stressed that each case must be dealt with on its own terms, and have rejected the use of presumptions for determining the best interests of the child.").

make the determination upon specific evidence relating to that child alone. . . . [M]agic formulas have no place in decisions designed to salvage human values."[52]

When this court extended the "weighty consideration" doctrine for the benefit of unfit parents in *In re T.W.M.*, it did not consider the applicability of D.C. Code § 16-309(b) and these principles. But now that we do, we find that the contradiction is stark. Whenever the doctrine makes a difference to the outcome of an adoption proceeding, it does so by subordinating the child's best interests to parental wishes that are in perceived conflict with them. It substitutes an invalid presumption for rational weighing of the evidence. And it forces the court to violate its statutory duty by approving an adoption the court finds not to be in the child's best interests.

"Weighty consideration" is different from serious and sober evaluation of a parent's views as to her child's best interests, which the court certainly should do in the interest of making a fully informed decision.[53] Instead, "weighty

---

[52] *In re D.I.S.*, 494 A.2d at 1325 (quoting *Bazemore v. Davis*, 394 A.2d 1377, 1383 (D.C. 1978) (en banc)).

[53] That a parent is unfit to raise a child does not *necessarily* mean the parent does not have the child's future welfare at heart, that the parent is uninformed about the child's needs and the proposed caretakers' qualifications, or that the

*(continued...)*

consideration" operates as a heavy thumb on the scale by requiring the court to defer to the parent's choice virtually *without scrutiny*, unless that choice is proved by clear and convincing evidence to be clearly contrary to the child's best interests—in other words, to be detrimental to the child. The court must capitulate to the parent's choice even if the parent is uninformed and uninterested in her child's needs or the petitioners' abilities to meet those needs, and even when the parental choice is *shown* by the evidence to be unnecessarily risky for the child compared to an alternative placement option.

This is not rational, for while we generally presume that *fit* parents "act in the best interests of their children,"[54] that presumption evaporates upon a valid, well-proven finding that the parent has so neglected and mistreated the child that she is *unfit* to care for the child any further. "Weighty consideration" is the antithesis of the informed, unbiased, reasoned decision-making on a firm evidentiary foundation that our cases demand in adoption proceedings. It

---

*(…continued)*
parent is unable to make and communicate a reasonable and valid preference in the child's best interests. *Cf. In re J.O.*, 174 A.3d 870, 882 (D.C. 2017) (recognizing that "competence is a lower standard than fitness; an individual may be competent to designate a preferred caregiver yet unfit to parent their child").

[54] *In re Ta.L.*, 149 A.3d at 1081 n.30 (quoting *Troxel*, 530 U.S. at 68).

substitutes, as the ground of decision, a non-evidentiary, generic presumption that an unfit parent's choice of caregiver is best for the child—a presumption that is not only inherently illogical and belied by common experience, but that is *refuted* by the weight of the evidence in the record of the case before the court.[55] "Weighty consideration" is an arbitrary and capricious way to decide a child's future; we would call it a clear abuse of discretion if our case law did not currently require it.

Ultimately, "weighty consideration" of an unfit parent's preference between competing adoption petitions is incompatible with the "best interests of the child" standard and our adoption statutes. There is a world of difference between selecting the adoptive placement option shown by the evidence to be the most beneficial to a damaged child, and acquiescing in a less advantageous and riskier option just because there is no compelling proof it will be clearly harmful to the child. Such acquiescence needlessly endangers the child's welfare and disregards the child's vital interests. "Weighty consideration" clearly conflicts with D.C.

---

[55] *Cf. Stanley*, 405 U.S. at 656-57 ("Procedure by presumption is always cheaper and easier than individualized determination. But when, as here, the procedure forecloses the determinative issues of competence and care, when it explicitly disdains present realities in deference to past formalities, it needlessly risks running roughshod over the important interests of both parent and child. It therefore cannot stand.").

Code § 16-309(b), which requires the judge to be satisfied that "the adoption will be *for* the best interests of the prospective adoptee" (emphasis added).

It is true that parental consent is usually required by D.C. Code § 16-304 before the court can grant a petition to adopt a child. But subsections (d) and (e) of that section allow the court to grant a petition for adoption without a parent's consent if the court finds that the parent abandoned the child (subsection (d)) or that the consent is "withheld contrary to the best interest of the child" (subsection (e)).[56] The "weighty consideration" rule conflicts with these provisions as well by requiring parental consent to a petition for adoption even when they say it is not required.

---

[56] The two subsections of § 16-304 read as follows:

> (d) When a parent whose consent is hereinbefore required, after such notice as the court directs, cannot be located, or has abandoned the prospective adoptee and voluntarily failed to contribute to his support for a period of at least six months next preceding the date of the filing of the petition, the consent of that parent is not required.

> (e) The court may grant a petition for adoption without any of the consents specified in this section, when the court finds, after a hearing, that the consent or consents are withheld contrary to the best interest of the child.

The argument is made, however, that subsection (e) embodies the "weighty consideration" doctrine because, if a parent consents to one competing adoption petition, the court cannot find by clear and convincing evidence that her objection to another petition is contrary to the child's best interest absent compelling proof that the other petition is clearly better for the child than the petition she favors. For several reasons, we are not persuaded by this interpretation of subsection (e).

First, D.C. Code § 16-304 does not require proof that a parent is withholding consent contrary to the child's best interest to be by clear and convincing evidence. Even if we thought such a requirement desirable, "[i]t is not within the judicial function to rewrite the statute, or to supply omissions in it, in order to make it more fair."[57] Second, the constitutional requirement of clear and convincing evidence applies only to proof of a parent's unfitness to care for a child; once that is established, it comports with due process for the child's best interests to be proved by a preponderance of the evidence, whether the parent consents or not.

Third, as we have mentioned, prior precedent in this jurisdiction supports a preponderance-of-the-evidence standard for deciding which of two competing

---

[57] *In re Te.L.*, 844 A.2d 333, 339 (D.C. 2004) (quotation marks and ellipsis omitted).

adoption plans is in a child's best interests, and our adoption statute nowhere requires a more stringent standard of proof for such determinations. Fourth, we perceive no persuasive justification for requiring a court to reject an adoption it finds to be best for the child merely because it can make that finding only by a preponderance of the evidence, and instead to require the court to approve an inferior petition that is not shown to be best for the child by any evidentiary measure.

Fifth, construing § 16-304 to contain such a requirement would render it in conflict with § 16-309's explicit requirement that the court be satisfied the adoption is in the child's best interest.

It also is argued that the "weighty consideration" doctrine is justified by the inherent difficulty of predicting which of competing acceptable adoption plans will turn out to be best for the child, and that, especially given the biological link between natural parent and child and the inherently subjective nature of the choice, a court therefore presumptively should defer to the parent. If such arguments are to be made, they are for the legislature, not for this court.

That said, we well appreciate that the choice between fit, decent, and capable petitioners—such as the choice that confronted the trial court in this case—is a

predictive judgment call to which certainty cannot be attached. It is committed by law to an individual judge's informed discretion after the judge has weighed many factors unique to each case and has faced up to the inevitable imponderables and unknowns. In some cases, no doubt, the judgment can be made with relative confidence. But in many cases, as in the one now before us, it would be on a fool's errand to demand the clarity and certainty of clear and convincing proof. Nevertheless, the choice must be made as best it can be; too much is at stake to tolerate less. Its difficulty is no excuse for failing to decide the momentous issue of the child's future upbringing as rationally and knowledgeably as possible on as firm a factual foundation as can be had.

## III.

For the foregoing reasons, we now abandon the "weighty consideration" doctrine in contested adoption proceedings in which the court properly determines, as a threshold requirement, that the parents are unfit to care for or raise their children, i.e., that their parental rights therefore may be terminated if it is in their children's best interests to do so.[58] We hold that an unfit parent's preference for a

---

[58] Thus, we mean our holding to encompass not only typical cases of parental unfitness or abandonment, but also cases of unwed biological parents who

*(continued…)*

fit custodian is not entitled to any deference, but only to such weight as the court thinks it deserves on its intrinsic merits. In contested adoption cases, the court therefore should determine what placement is in the child's best interest based on the evidence, without indulging any presumption in favor of parents found to be unfit. Our holding applies to all currently pending and future adoption proceedings in Superior Court and to all adoption cases now on direct appeal.[59]

We reverse the order of the Superior Court and remand for further proceedings.

EASTERLY, *Associate Judge*, concurring: I concur in the majority opinion to the extent that it holds that this court's weighty-consideration doctrine should be retired because it has no constitutional or statutory foundation. As the majority opinion explains, this court created the weighty-consideration doctrine to safeguard a parent's "constitutionally protected interest in influencing their child's future," *ante* at 3. But with our recognition of the due process rights of fit parents in *In re Ta.L.*, 149 A.3d 1060, 1081–83 (D.C. 2016) (en banc), the right of fit parents to

---

*(…continued)*
have failed to grasp their opportunity interests in parenting their children, see *supra* note 41.

[59] *See In re Sa.C.*, 178 A.3d 460, 461-62 (D.C. 2018).

choose the adoptive placement of their child is now directly protected. Parents who have been determined to be unfit, however, enjoy no constitutional protection regarding their decisionmaking for their child. Absent some clear statutory foundation for the weighty-consideration doctrine—which currently has none—there is no basis for courts to afford special weight in every case to the preferences of parents who have been deemed unfit.

This is not to say that the Council of the District of Columbia could not as a policy matter decide to enact legislation giving the wishes of parents, regardless of fitness, some type of special consideration, or, more generally, giving guidance to trial courts about weighting kinship adoptive placements. To the extent the majority opinion indicates that such legislation would be contrary to the best-interest-of-the-child standard currently incorporated in our TPR and adoption statutes, I disagree that we have the data or the policymaking authority to opine on such matters. Similarly, we have no basis to determine whether such a hypothetical statute would offend due process because it is arbitrary or irrational.